<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **NEELENDU BOSE d/b/a HIGH CREST,** *et al.*, | Civil Action No. 12-4671 (ES) |
| Plaintiffs, | <u>OPINION</u> |
| v. |  |
| **HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY,** *et al.*, |  |
| Defendants. |  |

<u>S</u>ALAS, <u>D</u>ISTRICT <u>J</u>UDGE

**I.      Introduction**

Pending before this Court is Defendant Alcoa, Inc.'s ("Alcoa") motion to dismiss Neelendu Bose d/b/a High Crest, LLC and Immunogen Diagnostics, Dr. Michael Segal d/b/a High Crest Functional Medicine, LLC's ("Plaintiffs") complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  (D.E. No. 96, Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiffs' Complaint For Failure to State a Claim Upon Which Relief Can Be Granted ("Def. Br.")).  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  The Court has considered the parties' submissions in support of and in opposition to the instant motion, and decides the matter without oral argument pursuant to Fed. R. Civ. P. 78(b).  For the following reasons, Defendant's motion is GRANTED.

## II. Background

Plaintiffs, in their Amended Complaint, bring a six-count action against Horizon Blue Cross Blue Shield ("Horizon"), Merck, and Alcoa. (D.E. No. 86, ("Am. Compl.")). Together, Plaintiffs are engaged in the business of providing health care and non-clinical support services, and have submitted health insurance claims to Horizon for payment. (*Id.* ¶¶ 30-36, 44, 87). Horizon is a health service corporation that, among other things, pays health care insurance claims on behalf of its members. (*Id.* ¶¶ 15-18). Alcoa sponsors a Health Care Benefits Plan ("Plan") for its employees. (*Id.* ¶ 41). The Plan is owned by Alcoa, but administered by Horizon. (*Id.* ¶¶ 51-52).

Counts I and II allege claims under ERISA, Count III alleges claims under Title VII, Count IV alleges defamation, Count V alleges unjust enrichment, and Count VI alleges a claim under the Patient Protection and Affordable Care Act.

## III. Legal Standard

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "courts are required to accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 440 n.1 (D.N.J. 2010) (holding that contradictory factual assertions on the part of defendants must be ignored). Courts must "determine whether, under any reasonable reading of the complaint, the Plaintiff may be entitled to relief." *Pinker v. Roche Holding Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002). "Factual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV. Discussion

### A. Plaintiffs Were Granted Leave to Amend Their Claims Against Alcoa

Defendant claims that Plaintiffs' Amended Complaint should be dismissed because Defendant did not consent and this Court did not grant leave. Because Defendant claims that it did not give consent to Plaintiffs to amend their Complaint, the issue is whether the Court granted Plaintiffs leave to amend their Complaint.

In this respect, the Court issued a letter order ("Order"), dated June 27, 2013, in response to a motion to dismiss filed by Merck. (D.E. No. 85). The Order stated: "The Court further grants leave to Plaintiff to amend their Complaint within thirty days of this Order to correctly plead all claims, if any, against Defendant Merck." (*Id.*). Alcoa argues that the Order granted Plaintiffs leave to amend their Complaint as to claims against Defendant Merck only. (Def. Br. at 5). According to Alcoa, the Court did not grant Plaintiffs leave to amend their Complaint as to claims against Alcoa. (*Id.*).

The Court is not persuaded by Defendant's argument for two reasons. First, when the Court grants a party leave to amend a pleading, it does so as to claims against all named parties. Second, Defendant interprets the Order granting leave to amend out of context. The Order makes reference to "Defendant Merck" simply because Merck was the movant of the motion that prompted the Order. Moreover, the Order does not expressly preclude amendment of the Complaint against the other named Defendants. Thus, the Court holds

3

that Plaintiffs were granted leave to amend their Complaint against all named Defendants, including Alcoa.

### B. Plaintiffs' ERISA Claims

Counts I and II allege claims under ERISA. Count I seeks a declaratory judgment that Alcoa violated ERISA while Count II alleges that Alcoa violated its fiduciary duties of loyalty and care to Plaintiffs. (Am. Compl. ¶¶ 237, 241). Counts I and II premise liability on Horizon's investigation of Plaintiffs' billing practices and on Horizon's denial to reimburse Plaintiffs for medical services that Plaintiffs provided to Plan participants. (*Id.* ¶¶ 222, 243). Counts I and II allege wrongdoing by Horizon, but allege that Alcoa is liable to Plaintiffs because Alcoa is a co-fiduciary under the Plan. (*Id.* ¶¶ 229, 255).

Alcoa raises two grounds for dismissal of Counts I and II. First, Alcoa argues that Plaintiffs' Amended Complaint alleges ERISA violations by Horizon, but fails to allege wrongdoing or ERISA violations by Alcoa. (Def. Br. at 6-7). Second, Alcoa argues that Plaintiffs' ERISA claims are barred because Plaintiffs failed to exhaust their appeal rights under the Plan prior to commencing this action.[1] (*Id.* at 7-8).

In response, Plaintiffs argue that Alcoa is liable to Plaintiffs for Horizon's alleged ERISA violations because Alcoa is a co-fiduciary of the Plan. (D.E. No. 107, Reply Memo of Law in Opp. to Def. Alcoa's Motion to Dismiss Pl.'s Compl. for Failure to State a Claim Upon Which Relief Can Be Granted ("Opp'n Br.") at 8-9). Alternatively, Plaintiffs claim that "[t]he agency relationship between [Alcoa] and [Horizon] arises from [Alcoa's] subrogation agreement in which it consents to being contractually bound by [Horizon's]

---

[1] Alcoa fails to rebut any arguments advanced by Plaintiff in their opposition brief regarding a clear showing of exhaustion. (*See* Opp'n Br. at 10-11). Notwithstanding any failure by Alcoa to rebut Plaintiff's contentions, the Court still grants Alcoa's motion to dismiss the ERISA counts because Plaintiffs failed to plead any of the requisite grounds of co-fiduciary liability.

4

acts."[2] (*Id.* at 8). Regarding Alcoa's claim that Plaintiffs failed to exhaust their appeal rights under the Plan, Plaintiffs cite to specific paragraphs in their Amended Complaint to demonstrate that they satisfied their pre-suit obligations. (*Id.* at 10). Alternatively, Plaintiffs allege that because Alcoa failed to follow proper claim procedures, Plaintiffs should be deemed to have exhausted the Plan's pre-suit appeal requirements. (*Id.* at 11).

Turning first to the co-fiduciary argument, Section 405 of ERISA provides that:

[A] fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).

To survive dismissal, a plaintiff must allege sufficient facts to make a plausible Section 405 claim. *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 641 (D.N.J. 2010). The plaintiff in *Goldenberg* made three specific allegations that a co-fiduciary defendant knowingly concealed a breach by another co-fiduciary in violation of Section 405(a)(1). (*Id.*). Notwithstanding, the court held that plaintiff's three allegations were insufficient, as

---

[2] Plaintiffs neither annex a subrogation agreement to their Amended Complaint or opposition, nor even mention a subrogation agreement in their Amended Complaint. For this reason, the Court will not consider Plaintiffs' alleged subrogation agreement as grounds for imposing liability on Defendant. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that a document mentioned in opposition to a motion to dismiss and integral to the complaint must be annexed to plaintiff's opposition in order to be considered).

a matter of law, to support the proposition that the defendant knowingly concealed a breach by a co-fiduciary. (*Id.*).

Here, Plaintiffs must sufficiently plead at least one of Section 405's three grounds of co-fiduciary liability. Plaintiffs' Amended Complaint, however, fails to make the requisite showing. Plaintiffs have not pleaded that Alcoa participated knowingly in, or knowingly undertook to conceal, an act or omission of Horizon, knowing that such act or omission is a breach of fiduciary duty. Nor have Plaintiffs pleaded that Alcoa enabled Horizon to commit a breach of fiduciary duty. Alternatively, Plaintiffs have not pleaded that Alcoa had knowledge of Horizon's alleged breach of fiduciary duty and then failed to take reasonable efforts to remedy any alleged breach. Indeed, unlike *Goldenberg*, where the plaintiff alleged facts that were held insufficient to state a claim, the Plaintiffs in this case failed to allege any facts implicating co-fiduciary liability under Section 405.

Thus, the Court finds that Plaintiffs fail to state a Section 405 ERISA claim against Alcoa. Accordingly, the Court grants Defendant's motion to dismiss Counts I and II.

### C. Plaintiffs' Title VII Discrimination Claim

Count III of Plaintiffs' Amended Complaint alleges employment discrimination based on race, color, or national origin under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq*. (Am. Compl. ¶¶ 264-273). Plaintiffs allege that because they are employees of Horizon, the protections afforded by Title VII are apt. (*Id.* ¶¶ 265, 267). To demonstrate their employment status, Plaintiffs allege that:

> [Horizon] pays the Plaintiff[s] for the services rendered by the [Plaintiffs]; when [Horizon] asks the Plaintiff questions or requests information the [Plaintiffs] must provide the information requested; [Horizon] has the ability to question treatment and services provided by the [Plaintiffs];

> [Horizon] has the ability to initiate an investigation into the [Plaintiffs'] conduct.[3]

(*Id.* ¶ 266).

Plaintiffs allege that Megan McCarthy, a Horizon employee, discriminated against "three minority women working for Plaintiff." (*Id.* ¶¶ 84, 268-271). According to Plaintiffs, Ms. McCarthy sent Plaintiffs a letter on August 2, 2011. (*Id.* ¶¶ 188, 268). In the letter, Ms. McCarthy accused an "Indian" and two "Asian" employees of performing medical services without necessary licenses. (*Id.* ¶¶ 189, 197, 268). Plaintiffs claim that under the Plan, Alcoa "is responsible to indemnify [Horizon] for its actions" and that Alcoa is vicariously liable for Horizon's alleged employment discrimination. (*Id.* ¶ 272).

In response, Alcoa raises two independent grounds for dismissal of Count III. First, Alcoa notes that the three employees mentioned in the Complaint are not named parties in this action. (Def. Br. at 9). Second, Alcoa claims that Plaintiffs were never employed by Horizon or Alcoa. (*Id.* at 9-10). Thus, Alcoa argues that Plaintiffs lack standing to assert their employment discrimination claim. (*Id.*).

Plaintiffs allege, for the first time in their opposition brief, that they are employees of Alcoa, as well as Horizon, by virtue of "assignment of benefits and authorization of representation" forms signed by employees of Alcoa who sought medical services from

---

[3] Unedited, paragraph 266 states: "Defendant pays the Plaintiff for the services rendered by the Defendant; when the Defendant asks the Plaintiff questions or requests information the Defendant must provide the information requested; the Plaintiff has the ability to question treatment and services provided by the Defendant; the Plaintiff has the ability to initiate an investigation into the Defendant's conduct." It is clear, however, that Plaintiffs are referring to Horizon, not Alcoa. Furthermore, Plaintiffs mistakenly referred to "Defendant" when they meant to write "Plaintiff" on three occasions; twice mistakenly referred to "Plaintiff" when they meant to write "Defendant," and once mistakenly referred to "Defendant's" when they meant to write "Plaintiffs'."

7

Plaintiffs. (Opp'n Br. at 14). Plaintiffs further allege that by virtue of "this assignment of benefits, Plaintiffs . . . [acquired] the right to assert claims against [Alcoa]." (*Id.*).

Alcoa disagrees and argues that any assignment by alleged Alcoa employees to Plaintiffs of the right to assert claims against Alcoa does not encompass an assignment of discrimination claims. (Reply Br. at 6). In support, Defendant cites to the sample assignment of benefits form which limits assignment of claims "to medical expenses incurred as a result of the medical services . . . received from [Plaintiffs]." (*Id.*; Opp'n Br., Ex. 4). Alcoa further submits that Count III must be dismissed because Plaintiffs have not alleged any adverse employment action, a *prima facie* element in a Title VII employment discrimination claim. (Reply Br. at 6-7).

The Court agrees with Alcoa. In order for Plaintiffs to avail themselves of Title VII, Plaintiffs' Amended Complaint must sufficiently allege facts that show that Plaintiffs had an employer-employee relationship with Alcoa. *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013). Title VII defines "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). The Supreme Court held that a nearly identical definition of "employee" in the ERISA statute was "completely circular and explains nothing."[4] *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992). Where the meaning of the term "employee" is contained in a statute but is not helpfully defined, a court may conclude that "Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." *Id.* at 322-23 (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989)).

---

[4] ERISA defines "employee" as "any individual employed by an employer." 29 U. S. C. § 1002(6).

8

In *Darden*, the Supreme Court adopted thirteen common-law factors for determining who qualifies as an "employee" under ERISA:

> [W]e consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

503 U.S. at 323-24 (quoting *Reid*, 490 U.S. at 751-52); *see also Walters v. Metro. Educ. Enters.*, 519 U.S. 202, 211-12 (1997) (citing *Darden* factors favorably in a Title VII case).

Recently, the Third Circuit has applied the *Darden* factors in determining who qualifies as an "employee" under Title VII. *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 180 (3d Cir. 2009). Since the *Darden* factors contain "no shorthand formula or magic phrase that can be applied to find the answer, . . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Darden,* 503 U.S. at 324 (internal citation omitted). No weight need be accorded to *Darden* factors that are not applicable to the particular case at hand. *CBS Corp. v. FCC*, 535 F.3d 167, 194 (3d Cir. 2008). The focus, however, should be on the first factor, that is, the level of control the defendant exerted over the plaintiff. *Covington*, 710 F.3d at 119. Furthermore, indicia of control should focus on asking: (1) which entity paid the plaintiff's salary, (2) who hired the plaintiff, and (3) who controlled the plaintiff's daily employment activities. *Id.*

Applying the *Darden* factors, the Court finds that Plaintiffs were neither employees of Horizon nor employees of Alcoa. Under the first factor, level of control, Plaintiffs do not allege that they received a salary from, that they were hired by, or that their daily

9

employment activities were controlled by either Horizon or Alcoa. Indeed, rather than receive a salary from Horizon, Plaintiffs would send an invoice to Horizon for reimbursement of the cost of a patient's visit. (Am. Compl. ¶ 83). To be clear, Horizon did not issue reimbursements directly to Plaintiffs, but to Plaintiffs' patients who were then obligated to forward the reimbursement to Plaintiffs. (*Id.* ¶ 22).

Plaintiffs further allege that Horizon was empowered to demand information from Plaintiffs. Yet this authority is not indicia of control that demonstrates an employment relationship when the parties are participants in a health benefits plan. *See Darden,* 503 U.S. at 323-24. Plaintiffs' subsequent allegation that Horizon was authorized "to question treatment and services provided by [Plaintiffs]" and that Horizon had "the ability to initiate an investigation into the [Plaintiffs'] conduct" buttresses the notion that the parties' relationship does not describe the conventional master-servant relationship as understood by common-law agency doctrine. *See Covington*, 710 F.3d at 119.

The Court finds that Plaintiffs fail to show that they were employees of either Horizon or Alcoa under *Darden*. Furthermore, the Court has combed over the Amended Complaint for allegations that would indicate an employment relationship under the remaining twelve *Darden* factors, but has not found any. Thus, Plaintiffs have failed to state a Title VII claim against Horizon or Alcoa. Accordingly, the Court grants Defendant's motion to dismiss Count III.

### D. Plaintiffs' Defamation Claim

Alcoa raises three independent grounds for dismissal of Count IV. First, that Plaintiffs' claim may be time-barred under New Jersey's one-year statute of limitation for defamation claims. (Def. Br. at 10). Second, that Plaintiffs fail to plead the elements of a

defamation claim.  (*Id.* at 11).  Third, that Plaintiffs fail to explain how Alcoa's obligation to indemnify Horizon makes Alcoa liable for alleged defamatory statements made by Horizon.  (*Id.*).

Plaintiffs argue, for the first time in their opposition brief, that Alcoa is liable to Plaintiffs for Horizon's alleged defamation because Alcoa is a co-fiduciary of the Plan.  (Opp'n Br. at 17).  Plaintiffs also annexed an "explanation of benefits form" allegedly sent by Horizon to C.C., a Plan participant, containing the statement "possible fraudulent claim" to demonstrate that Plaintiffs were defamed.  (*Id.*).  The document is titled "Claim Status Details" and was printed from a website on July 21, 2011.  (*Id.*).  Alcoa contends, however, that because the document was printed on July 21, 2011 and the Complaint was filed on July 25, 2012, Plaintiffs' claim is time-barred.  (Reply Br. at 8).

To state a claim for defamation under New Jersey law, a plaintiff must show: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher."  *DeAngelis v. Hill*, 180 N.J. 1, 13 (2004) (internal citation omitted).  A defamatory statement "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  *Id.* (internal citation omitted).  To determine whether a statement is defamatory a court must examine three factors: (1) content, (2) verifiability, and (3) context.  (*Id.*).

Moreover, a complaint must allege facts "sufficient to identify the defamer and the circumstances of publication."  *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 767-68 (1989) (internal citation omitted).  That is, a plaintiff must plead "when, where, by which defendants and by what words, written or oral, plaintiff was defamed."

11

*Zoneraich v. Overlook Hosp.*, 212 N.J. Super. 83, 101, 514 A.2d 53 (App. Div. 1986). Also, when publication is by an employee, a defamation claim must be brought against the individual, and not only against the employer. *See Allia v. Target Corp.*, 2008 WL 1732964, *6 (D.N.J. Apr. 10, 2008) (dismissing defamation claim where plaintiff did not identify which employee made the defamatory publication).

To be timely, a defamation claim in New Jersey must "be commenced within one year next after the publication of the alleged libel or slander." N.J. Stat. Ann. § 2A:14-3 (West 2011). Thus, the statute of limitations "is measured from the time of publication rather than the time a cause of action accrues." *Palestri v. Monogram Models, Inc.*, 875 F.2d 66, 70 (3d Cir. 1989). A court can dismiss a defamation claim on statute of limitations grounds on a Rule 12(b)(6) motion, provided that the untimeliness of the claim is evident from the complaint. *R.K. v. Y.A.L.E. Sch., Inc.*, 621 F. Supp. 2d 188, 202 (D.N.J. 2008) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994)).

Here, the Court combed over the Amended Complaint and identified five distinct allegations of defamatory statements, none of which properly state a claim of defamation. First, Plaintiffs allege that J.K., a Plan participant, contacted Horizon in August 2011. (Am. Compl. ¶ 159). Plaintiffs allege that Horizon told J.K. that Plaintiffs' "claims were not being reimbursed because [Plaintiffs] had not provided the requested medical records." (*Id.* ¶ 160). Plaintiffs however, do not allege who at Horizon made the statement to J.K. Additionally, there are no individually-named defendants in this action. Thus, Plaintiffs fail to state a defamation claim with respect to Horizon's statement to J.K.

Second, Plaintiffs allege that M.R., a Plan participant, was contacted by Megan McCarthy, a Horizon employee. (*Id.* ¶¶ 84, 171). According to Plaintiffs, "Ms. McCarthy spoke disparagingly about Ms. Reyes and said that she was not qualified to perform treatment." (*Id.* ¶ 173). Ms. Reyes is an employee of Plaintiffs, (*Id.* ¶ 191), but Plaintiffs do not plead when Ms. McCarthy made her statement. Moreover, Ms. McCarthy is not a named defendant in this action. Thus, Plaintiffs fail to state a defamation claim with respect to Ms. McCarthy's statement to M.R.

Third, Plaintiffs allege that C.M., a Plan participant, had a telephone conference call with Ms. McCarthy and a representative of Plaintiffs. (*Id.* ¶ 176). According to Plaintiffs, "Ms. McCarthy told C.M. that [Horizon] requested documents from [Plaintiffs] that were not provided." (*Id.* ¶ 177). Like Plaintiffs' allegations with respect to M.R., Plaintiffs neither plead when Ms. McCarthy made her statement nor name Ms. McCarthy as a defendant in this action. Thus, Plaintiffs fail to state a defamation claim with respect to Ms. McCarthy's statement to C.M.

Fourth, Plaintiffs allege that C.C., a Plan participant, received documentation from Horizon indicating that Plaintiffs' "claims were not being paid because they were a 'possible fraudulent claim.'" (*Id.* ¶ 181). To bolster this allegation, Plaintiffs annexed a document to their opposition brief that included the "possible fraudulent claim" statement. (Opp'n Br. Ex. 6). This document, however, was printed on July 21, 2011, over one year from the July 25, 2012 filing date of this action. In light of the one-year-from-publication requirement for the filing of a defamation claim, Plaintiffs' defamation claim with respect to the document Horizon sent to C.C. is time-barred.[5]

---

[5] Generally, a court may not consider documents not attached to a complaint on a Rule 12(b)(6) motion. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). And, as mentioned above, in

Fifth, Plaintiffs allege that they received a letter from Horizon, dated August 2, 2011, accusing Plaintiffs of providing medical services by non-licensed individuals. (Am. Compl. ¶ 188). The defamatory statement, however, was published to Plaintiffs, and not a third party. Thus, Plaintiffs fail to state a defamation claim with respect to the August 2, 2011 letter sent by Horizon to Plaintiffs.

In sum, Plaintiffs fail entirely to state a defamation claim. Accordingly, the Court grants Defendant's motion to dismiss Count IV. Specifically, the claim based on the statement made to C.C. and the August 2, 2011 letter is dismissed because the former statement is time-barred and the latter statement was not made to a third party. The claim based on the statements made to J.K., M.R., and C.M. is also dismissed; the J.K. claim can be revived if Plaintiffs can identify the individual who made the statement and properly join them as a defendant. Likewise, the M.R. or C.M. claim can be revived provided Plaintiffs join Ms. McCarthy as a defendant and Plaintiffs plead that she made the statement within one year prior to the filing of this action.

### E. Plaintiffs' Unjust Enrichment Claim

Plaintiffs ground their unjust enrichment claim on Horizon's alleged refusal to reimburse Plaintiffs for medical claims while also "drawing out their 'investigation'" of Plaintiffs' practices. (Am. Compl. ¶ 285). Plaintiffs claim that under the Plan, Alcoa "is

---

order for a court to dismiss a defamation claim on statute of limitations grounds on a Rule 12(b)(6) motion, the untimeliness of the claim must be evident on the face of the complaint. *R.K. v. Y.A.L.E. Sch., Inc.*, 621 F. Supp. 2d at 202. Notwithstanding, a court may consider a document not attached to the complaint if 1) the document is attached to a brief, 2) the document is integral to the complaint, and 3) the document is undisputedly authentic. *See Burlington*, 114 F.3d at 1426. In this case, the document Plaintiffs attached to their opposition brief is being considered by the Court because the document meets the requirements set forth in *Burlington* and the document evinces the untimeliness of the defamation claim with respect to Horizon's statement to C.C. That is, under *Burlington*: 1) the document was annexed to Plaintiffs' opposition brief; 2) the document is integral to the complaint because it establishes the untimeliness of the defamation claim; and 3) the document is undisputedly authentic because it was submitted with Plaintiffs' opposition brief–to their detriment–and ratified by Defendant in Defendant's reply brief.

responsible to indemnify [Horizon] for its actions" and that Alcoa is vicariously liable for Horizon's alleged unjust enrichment.  (*Id.* ¶ 287).

Defendant raises two grounds for dismissal of Count V.  First, Defendant argues that Plaintiffs' claim of unjust enrichment, which is a state law claim, is completely preempted under ERISA's civil enforcement mechanism, Section 502(a)(1)(B), and expressly preempted under Section 514(a) of ERISA.  (Def. Br. at 12); 29 U.S.C. §§ 1132(a)(1)(B), 1144(a).  Alcoa submits that Plaintiffs' claim seeks to recover benefits withheld by Horizon, and that such a claim falls within ERISA's enforcement scheme of superseding state law.  (Def. Br. at 13).  Second, notwithstanding preemption, Alcoa argues that Plaintiffs fail to plead the elements of an unjust enrichment claim.  (*Id.*).

Plaintiffs argue that ERISA preemption does not apply to any state law that regulates insurance, therefore, their unjust enrichment claim is saved from ERISA preemption.  (Opp'n Br. at 18); 29 U.S.C. § 1144(b)(2)(A).  Moreover, Plaintiffs argue that because Alcoa is an agent and fiduciary of Horizon, Alcoa is vicariously liable for Horizon's refusal to reimburse Plaintiffs for medical claims submitted to Horizon.  (Opp'n Br. at 19).

Section 502(a)(1)(B) provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  In interpreting Section 502(a), the Supreme Court has held that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  *Aetna Health*

15

*Inc. v. Davila*, 542 U.S. 200, 209 (2004) (internal citation omitted). Thus, a plan participant's concurrent state law cause of action is completely preempted by Section 502(a)(1)(B) if no other independent legal duty is implicated by a defendant's actions. *See id.* at 210. Conversely, for a plan participant to overcome complete preemption under Section 502(a)(1)(B), a state law claim must be resolvable without reference to an ERISA-regulated benefits plan. *See id.*

ERISA also includes an express preemption provision—Section 514(a)—which provides that ERISA "shall supersede any and all State laws as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). The Supreme Court has held that Section 514(a) extends to preemption of common law causes of action that relate to an ERISA-regulated benefits plan. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987). Indeed, the Third Circuit upheld dismissal of an unjust enrichment claim for preemption under both Sections 502(a)(1)(B) and 514(a) where plaintiff's claims related to benefits due under an ERISA plan. *Scheibler v. Highmark Blue Shield*, 243 F. App'x. 691, 693-94 (3d Cir. 2007).

Here, Plaintiffs' unjust enrichment claim is preempted under both Section 502(a)(1)(B) and Section 514(a). Both Plaintiffs' unjust enrichment claim and the ERISA counts are based on Horizon's refusal to reimburse Plaintiffs for medical services provided under an ERISA-regulated health benefits plan. As such, the unjust enrichment count is completely preempted because the claim derived from an attempt to retrieve "benefits due" while not seeking remedy from a violation of any legal duty independent of ERISA. In fact, Plaintiffs ostensibly commenced this action to rectify the denial of payment promised under the ERISA-regulated Plan. Furthermore, Plaintiffs allege that Alcoa is responsible

to indemnify Horizon pursuant to the terms of the Plan. Thus, the unjust enrichment claim is completely preempted because the claim cannot be resolved without reference to the ERISA-regulated Plan. Similarly, the unjust enrichment count is expressly preempted because Plaintiffs' claim "relates to" the denial of plan benefits.

Thus, the Court finds that Plaintiffs fail to state a claim for unjust enrichment because Plaintiffs' unjust enrichment claim is completely and expressly preempted by ERISA.[6] Accordingly, the Court grants Defendant's motion to dismiss Count V.

### F. Plaintiffs' Discrimination Claim Under Section 2706 of the Patient Protection and Affordable Care Act ("PPACA")

Count VI of Plaintiffs' Amended Complaint alleges that Horizon's practice of disbursing benefits checks to Preferred Provider Organizations ("PPOs") while refusing to disburse benefits checks to Plaintiffs, who are non-PPOs, is discriminatory and violates Section 2706 of the PPACA. (Am. Compl. ¶ 293); 42 U.S.C. § 300gg-5. Plaintiffs allege that the PPACA became effective on March 23, 2010, the day the Act was signed into law. (Am. Compl. ¶ 296). Plaintiffs allege that Alcoa is responsible for Horizon's alleged discrimination. (*Id.* ¶ 304).

Alcoa raises two grounds for dismissal of Count VI. First, Alcoa argues that the PPACA became effective on January 1, 2014 and that because Plaintiffs' claims arose prior to then, Count VI has no legal support. (Def. Br. at 14); 42 U.S.C. § 300gg. Second, Alcoa argues that Section 2706 does not cover claims alleging discrimination based on a

---

[6] Plaintiffs' argument that their unjust enrichment claim is saved under Section 514(b)(2)(A) of ERISA is unavailing. Section 514(b)(2)(A)'s savings clause exempts from ERISA preemption "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). Notwithstanding, even state laws regulating insurance are preempted if the state law merely provides an alternate ground for relief that is in addition to ERISA's enforcement scheme. *Davila*, 542 U.S. at 217-18. Thus, Defendant is correct that Plaintiffs' common law unjust enrichment claim is outside the scope of ERISA's unambiguous savings clause. Moreover, under *Davila*, the unjust enrichment claim is duplicative of the ERISA claims.

17

provider's status as either PPO or non-PPO. (Def. Br. at 14); 42 U.S.C. § 300gg-5. Rather, Alcoa submits that Section 2706 only precludes discrimination based on a "'provider's license or certification.'" (Def. Br. at 14).

As Alcoa correctly states, the PPACA provides that "[t]his section is effective for plan years beginning on or after January 1, 2014, as provided by § 1255 of Act March 23, 2010, P.L. 111-148, which appears as a note to this section." 42 U.S.C. § 300gg. Plaintiffs plead a Section 2706 claim on the erroneous premise that the PPACA was law during the time their claim accrued. To be sure, Plaintiffs commenced this action on July 25, 2012, well before the January 1, 2014 effective date of the PPACA. (*See* D.E. No. 1). Thus, the Court finds that Plaintiffs fail to state a PPACA claim. Accordingly, the Court grants Defendant's motion to dismiss Count VI.

## IV.    Conclusion

For these reasons, the Court GRANTS Defendant's motion to dismiss: Counts I, II, III, and V without prejudice; Count IV without prejudice except that the alleged defamatory statement made to C.C. is time-barred; and Count VI with prejudice because the PPACA was not law when the alleged claim accrued.[7]

An appropriate Order follows this Opinion.

*s/Esther Salas*  
**Esther Salas, U.S.D.J.**

---

[7] Fed. R. Civ. P. 15(a)(2) provides that the Court "should freely give leave [to amend a pleading] when justice so requires." However, no amendment should be permitted if an amendment would be futile. *See Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990). The Court may prohibit leave to amend where the amended pleading would not survive a motion to dismiss. *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983).